**Ronald L. LAMBERT, Plaintiff–Appellant,**

v.

**David F. SHEPARD, Individually and d/b/a Tri–State Signs and Liberty Enterprises, Inc., Defendants–Appellees.**

Court of Appeals of Tennessee, Western Section, at Knoxville.

May 18, 1989.

Application for Permission to Appeal Denied by Supreme Court Aug. 7, 1989.

Glenna M. Ramer, Chattanooga, for plaintiff-appellant.

Paul H. Dietrich of Dietrich & Dietrich, Cleveland, for defendants-appellees.

TOMLIN, Presiding Judge (Western Section).

Plaintiff brought this suit against defendant[1] to recover damages for personal injuries alleged to have occurred when a ladder furnished plaintiff as an employee of defendant slipped out from under him, causing plaintiff to fall to the pavement below. The trial court granted defendant's motion for a directed verdict made at the close of plaintiff's proof based upon the "simple tool doctrine." On appeal, plaintiff

---

1. Named as defendants were David F. Shepard, individually, and d/b/a Tri–State Signs, and Liberty Enterprises, Inc. Plaintiff contended that the companies named were merely instrumentalities of Shepard. We shall refer to the named defendants collectively as "defendant."

has presented three issues for our consideration. The first issue, and one that is dispositive of this appeal, is whether or not the trial court erred in granting defendant's motion for a directed verdict. Issues two and three, which we do not reach, deal with the exclusion of certain testimony during the course of plaintiff's proof. We find no error and affirm.

In his amended complaint, plaintiff alleged that defendant owed him a duty to provide a safe working environment, and that defendant breached this duty by failing to provide him safe equipment. Specifically, plaintiff asserted he was furnished a ladder that was unreasonably dangerous because it did not have rubber treads. As noted, the feet of the ladder slipped after plaintiff had climbed it, causing his injuries. In addition, plaintiff alleged defendant failed to warn him that the ladder was dangerous and failed to periodically inspect and repair all of its equipment.

Plaintiff's proof presented the following facts: Before going to work for defendant, plaintiff had worked eight years in the sign business. During those years he gained experience climbing ladders such as the one he was using when he fell. Plaintiff stated in his discovery deposition that he had used this particular ladder before, but testified differently at trial. Plaintiff had considerable talent and expertise in the field of sign making. While employed for the purpose of ultimately becoming a "shop" man, doing primarily inside work, at the time he was hired he was advised he would be performing work both inside and outside.

Defendant's truck used in the erection and maintenance of signs was equipped with a sixty-five foot boom. It also had various and sundry equipment, including an aluminum extension ladder which hung on the side of the truck. Plaintiff had worked on and with this truck six to twelve times during the six-week period prior to his fall. The feet of the ladder from which plaintiff fell were readily visible to anyone who observed the ladder as it hung on the outside of the truck, and the fact that the rubber shoes were missing from the feet was evident to anyone who might have looked at them. Plaintiff stated that he never inspected the ladder and was never aware that the rubber shoes or pads were absent, saying that he was never told to inspect any of the equipment. The ladder in question was a twenty-foot extension ladder, with metal feet that ordinarily had rubber shoes or pads on them. They were in fact missing from the ladder at the time of plaintiff's fall.

The accident occurred after plaintiff had placed the extension ladder on the asphalt parking lot under a face sign on a building. After extending the ladder some two feet beyond its twenty-foot length, plaintiff climbed the ladder to repair the sign. As he reached the top of the sign, the feet of the ladder began to slide, causing plaintiff to fall. Plaintiff admitted that bare metal was not safe on asphalt and would slide.

Plaintiff's fellow-employee, Wesley Prater, who was working with plaintiff on the sign at the time of the accident, testified that he had climbed the ladder himself just prior to plaintiff's fall. Prater stated that he considered himself responsible for his own safety, and felt that before utilizing the ladder it was his responsibility to ascertain whether it was safe or not. He further stated that it was not good practice to climb a ladder that did not have rubber pads on its feet while it was resting on asphalt pavement. No proof was presented of any actual knowledge on the part of defendant that the rubber shoes or pads were missing from the feet of the ladder.

In support of its motion for a directed verdict, defendant's counsel stated that he was relying upon the simple tool doctrine as recognized by the courts of this state. The trial court acknowledged the simple tool doctrine as a valid defense in granting defendant's motion.

As authority for his position, defendant relies upon the cases of *Sivley v. Nixon Mining Drill Co.*, 128 Tenn. 675, 164 S.W. 772 (1913); *Philip Carey Roofing & Mfg. Co. v. Black*, 129 Tenn. 30, 164 S.W. 1183 (1914); and *Southern Ry. Co. v. Hensley*, 138 Tenn. 408, 198 S.W. 252 (1917).

While it appears that the simple tool doctrine, at least insofar as ladders are

concerned, was adopted in this state in *Sivley*, it was for the Supreme Court in the subsequent cases of *Philip Carey Roofing* and *Southern Ry. Co. v. Hensley* to enunciate what the doctrine really entails. In *Philip Carey Roofing*, the Court stated:

The general principle is that a master is bound to inspect tools or appliances furnished by him to his workmen, and to keep them in sufficient repair. If, however, the tools or appliances are common or simple tools, there is an exception to this general rule. The presumption in such cases is that the servant is equally conversant with the nature of such simple or common tools, and is in as good a position as the master to discover any defects therein.

The master's opportunities for learning of a fault in a tool of this kind are no better than the opportunities of the servant. By reason of the character of such an implement, no superiority of knowledge on the part of the master exists, or can be presumed, as to defects therein. The foundation of the simple tool doctrine is the assumption that the knowledge of the master and servant must be equal.

129 Tenn. at 33–34, 164 S.W. at 1184–85. *See also Southern Ry. Co. v. Hensley,* 138 Tenn. at 413, 198 S.W. at 253.

The facts of the case under consideration are almost identical with the facts in *Sivley*. In *Sivley*, plaintiff was injured while using a ladder, eighteen feet in length, furnished him by the defendant. The accident occurred when the ladder slipped from its footing on an oily floor. Plaintiff had been employed by defendant six to eight weeks. He testified that he had used the ladder previously, but had not been notified as to and did not know the condition of the spikes in the feet of the ladder. The trial court directed a verdict in favor of the defendant company. On appeal, the Court of Civil Appeals reversed, holding this to be error. The Supreme Court granted certiorari.

In reversing the Court of Civil Appeals and reinstating the directed verdict for the defendant, the *Sively* court said:

It has been ruled by courts, quite without exception, that an ordinary ladder falls within the class of simple tools in respect of a defect in which the employer is held not liable, on the ground that a defect in such a simple tool must be obvious to its user, by whom any risk of danger therefrom must be held to be assumed.

128 Tenn. at 677–78, 164 S.W. at 772.

In response to plaintiff's insistence that such a ladder was not a "simple tool," the Supreme Court, following the authority of the courts of two sister states, held that the installation of brads or spikes in the bottom of the upright members of the ladder would not have the effect of removing the ladder from a simple tool category into a class with more complicated instrumentalities.

Furthermore, the simple tool doctrine is recognized and fully explained and elaborated upon in 53 Am.Jur.2d, *Master and Servant,* § 189, pp. 247–48.

Plaintiff contends that the trial court was in error in relying upon *Philip Carey Roofing*, in as much as in that case the Supreme Court held that a jury question was there presented. It is apparent that what the trial court was doing in citing *Philip Carey Roofing* was acknowledging the existence of the simple tool doctrine in this state. The facts in *Philip Carey Roofing* readily distinguish it from both *Sivley* and *Southern Ry. Co. v. Hensley*. The distinguishing facts are twofold. There was proof to the effect that plaintiff's employer had actual knowledge of a defect in the ladder at the time he furnished it to plaintiff. There was also testimony in the record that the defective condition of the round of the ladder that was broken was not readily discoverable. The Supreme Court correctly observed that these facts justified the action of the trial court in overruling defendant's motion for a directed verdict. Those circumstances have not been shown in the present case.

Plaintiff further contends that this Court should adopt the rule laid down in *Overstreet v. Norman,* 44 Tenn.App. 343, 314 S.W.2d 47 (1958), asserting that *Overstreet*

overruled *Sivley* and its progeny. Plaintiff's interpretation of *Overstreet* is in error. *Overstreet* fails to address, directly or indirectly, the simple tool doctrine. *Overstreet* is not a simple tool case but is a case which involved the application of the general rule of the duty of care owed by a master to a servant in his employ.

Lastly, plaintiff contends that *Sivley, Philip Carey,* and *Southern Ry. Co. v. Hensley* are "old" cases, and that this Court should overrule them. First, it is readily apparent that even if we desired to do so—which we do not—this Court does not have the authority to overrule a decision of the Supreme Court. The fact that these decisions are "old"—decided some seventy-five years ago, does not take away from their quality and viability. One may view the quality of older decisions in the same way a connoisseur of wine writes about old wine. We find no reason or justification to attempt to "modernize" the law simply on the basis of the passage of time. Accordingly, the judgment of the trial court is affirmed. Costs in this cause on appeal are taxed to plaintiff, for which execution may issue if necessary.

CRAWFORD and FARMER, JJ., concur.